**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Bradshaw, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>United States Department of<br>Agriculture, et al.<br><br>    Defendants. | No. CV 05-0916-PCT-PGR<br><br>ORDER |

Pending before the Court are the parties' Cross-Motions for Partial Summary Judgment. The Court now rules on the motions.

**I.  FACTUAL BACKGROUND**

For many years 36 C.F.R. § 251.50 (1998) provided that "[a]ll uses of National Forest System lands, improvements, and resources" constituted "special uses" requiring "authorization from the authorized user" to conduct the use. This long-standing permitting regulation allowed the Forest Service to manage all special uses on National Forest Service lands. However, as Courts began to construe the regulation "as not requiring an authorization for special uses that occur on National Forest Service roads and trails" a "gap in regulatory coverage in the special use program" was created.

In response, some commercial operators "design[ed] their services to fit the regulatory gap, potentially compromising the quality of the recreation experience, public safety, and the

interests of the United States."  Such operations created numerous management difficulties for the Forest Service, including: (1)  requiring the Forest Service to implement "intensive case-specific monitoring" to ensure companies claiming to operate only on forest roads and trails actually so confined their operation; (2) creating "an uneven playing field among businesses, some of which operate under a special use authorization and pay a land use fee, while others do not;" and (3) impeding the Forest Service's ability to regulate use of National Forest System road and trials in popular areas where "uncontrolled use can result in land and resource impacts, user conflicts, or increased vehicular and pedestrian traffic with associated traffic safety concerns on Forest System roads and trails."

Consequently, on January 22, 2003, the Forest Service published a proposed rule to, among other things, "clarify that activities requiring a special use authorization on National Forest System lands are also subject to the requirement for a special use authorization when they are conducted on National Forest System roads and trials . . . ."  The Forest Service noted that while "[a] final determination will be made for the final rule," its "preliminary assessment was that the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4347, did not require an environmental assessment or an environmental impact statement ("EIS") for the proposed rule.

The proposed rule invited public comment over a sixty-day period.  During this time, the Forest Service received 4,055 comments, including comments from many of the Plaintiffs.  The Forest Service analyzed the comments and responded to them as part of the seventeen page, single spaced comment review included in the preamble of the final rule.

On July 13, 2004, after completing its analysis of public comments, the Forest Service published the finalized clarifying regulation with an effective date of August 12, 2004. Included with the finalized regulation was the above mentioned comment analysis, which discusses the public comments and general concerns about NEPA compliance.  The Forest Service confirmed its preliminary assessment that NEPA did not require an environmental assessment or an EIS for the proposed rule because the regulation merely provided "more

consistent procedures for processing special use proposals and applications and administering special use authorizations . . . ." The Forest Service specifically noted that subsequent, site specific "[i]ssuance of a special use authorization for a specific use as provided in this rule, however, may trigger the need for documentation of environmental analysis on a case-by-case basis under NEPA."

Through the present action, the Plaintiffs have challenged the promulgation of the new aforementioned rule in general, and its implementation and enforcement in the Sedona Ranger District specifically. The Plaintiffs contend that the rule violates several federal laws and policies and NEPA in particular. Furthermore, the Plaintiffs assert that promulgation of the rule is an arbitrary and capricious action that may be redressed by declaratory and injunctive relief under the Administrative Procedures Act ("APA"). Arguing the substantial merit of their claims and the threat of immediate and irreparable injury, the Plaintiffs requested a temporary restraining order and a preliminary injunction pursuant to Fed. R. Civ. P. 65 and/or a stay of agency action under the authority of 5 U.S.C. § 705. After an evidentiary hearing in April of 2005, the Court denied the Plaintiffs' request for injunctive relief.

The Court further ordered that Counts 3 and 4 of the Plaintiffs' First Amended Complaint were dismissed through stipulation, that Counts 2, 5 and 6 were stayed pending the outcome of administrative appeals, and that Count 1 would be resolved through summary judgment. A stipulated briefing schedule was entered as to Count 1 on October 20, 2005, and the present motions were filed accordingly.

**II.    LEGAL STANDARD AND ANALYSIS**

The Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, empowers federal courts to "hold unlawful and set aside agency action, findings, and conclusions" if they fail

to conform to six specified standards.[1]  Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 377-78 (1989).  The APA imposes a narrow and highly deferential standard of review limited to a determination of whether the agency acted in a matter that was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law."  5 U.S.C. 706(2)(A).  An agency's decision may only be called "arbitrary and capricious" if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to evidence before the agency, or is so implausible that it could not be ascribed to a difference in vew or the product of agency expertise.

Southwest Center for Biological Diversity v. U.S. Forest Service, 100 F.3d 1443, 1448 (9th Cir. 1996).  The Court is to review the administrative record as a whole, or those parts cited by a party, when deciding whether an agency has acted in accordance with the law.  Florida Power & Light Co. v. U.S. Nuclear Regulatory Commission, 470 U.S. 729, 743-44 (1985).

When faced with a motion for summary judgment in an APA case, the function of the district court is to determine whether or not, as a matter of law, the evidence in the administrative record permitted the agency to make the decision it did.  Occidental Engineering Co. v. Immigration and Naturalization Service, 753 F.2d 766, 769-70 (9th Cir. 1985).  There are no disputed facts for the Court to resolve since this is accomplished at the agency level.  Id.

**A.     Categorical Exclusion**

Count One of the Plaintiffs' First Amended Complaint maintains that the Forest Service "did not prepare and environmental assessment or an environmental impact statement

---

[1] Title 5 U.S.C. § 706(2) provides that a reviewing Court shall "hold unlawful and set aside agency action,, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of any agency hearing provided by statute; or (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court."

as required by NEPA, by regulations of the Council on Environmental Equality ("CEQ"), i.e. 40 C.F.R. § 1501.2, and by their own administrative policies directives and regulations, i.e. Forest Service Handbook ("FSH") 1909.15, Chapter 10." The Forest Service admits that no environmental assessment or EIS was prepared in connection with the publication of the proposed final rule; however, the Forest Service states that no such statement or assessment was required under the applicable law since the rule did not constitute a major federal action or a major substantive policy change.

Section 4332(2)(c) of NEPA requires all federal agencies to prepare an environmental impact statement for every major federal action significantly affecting the quality of the human environment. 40 C.F.R. § 1508.18 defines major federal action to include:

> (a) . . . new and continuing activities, including projects and programs entirely or partly financed, assisted, conducted, regulated or approved by federal agencies; new or revised agency rules, regulations, plans, policies or procedures; and legislative proposals. . . .
>
> (b)(1) Adoption of official policy, such as rules, regulations, and interpretations adopted pursuant to the Administrative Procedure Act, 5 U.S.C. § 551 et seq . . . . .
>
> . . . . formal documents establishing an agency's policies which will result in or substantially alter agency programs.

The CEQ's regulations provide for two methods of determining whether a proposed major federal action requires preparation of an EIS. First, the agency may conduct a preliminary examination, called an environmental assessment, of the proposed action. 40 C.F.R. §§ 1501.4, 1508.9. The environmental assessment serves to briefly provide sufficient evidence and analysis to determine whether the action will have a significant effect on the environment which is the threshold for preparation of an EIS. Id. at § 1508.9.

Second, under the CEQ's regulations, which were promulgated pursuant to NEPA, each agency is directed to identify classes of actions that normally "do not individually or cumulatively have a significant effect on the human environment and are, therefore, excluded from the requirement to prepare an environmental assessment or an EIS. Id. at §§ 1507.39b)(2), 1508.4; Alaska Center for the Environment v. U.S. Forest Service, 189 F.3d

- 5 -

1  851, 857 (9th Cir. 1999). These classes of actions are called "categorical exclusions." Alaska
2  Center, 189 F.3d at 857. However, the agency's procedures must also provide for
3  extraordinary circumstances in which a normally excluded action may have a significant
4  environmental effect and therefore, require preparation of an environmental assessment or
5  an EIS. 40 C.F.R. § 1508.4. Accordingly, for each action that may fit the criteria for a
6  categorical exclusion, the agency must assess whether there are any extraordinary
7  circumstances that increase the significance of the action's potential environmental effects.
8  However, it is important to note that "[t]he mere presence of one or more of these resource
9  conditions does not preclude use of categorical exclusion," as "[i]t is the degree of the
10 potential effect of a proposed action on these resource conditions that determines whether
11 extraordinary circumstances exist." FSH Part 1909.15, Section 30.2

12    The Forest Service provides its criteria for identifying categorical exclusions in the
13 FSH Part 1909.15, Chapter 30. Under section 31.12(2) of Chapter 30, the Forest Service
14 categorically excludes "[r]ules, regulations, or policies to establish Service-wide
15 administrative procedures, program processes, or instructions." In addition, the Forest
16 Service provides a non-exhaustive list of some "rules, regulations or policies" that fall within
17 this categorical exclusion, including changes to conditions of special use authorizations. Id.
18 at § 31.12(2)(d).

19    On January 22, 2003, the Forest Service published a proposed rule to amend
20 regulations at 36 C.F.R. Part 251, Subpart B, that govern special uses on National Forest
21 System land. Prior to this proposal, the former regulation at 251.50(d) provided that a special
22 use authorization was not required for use of National Forest System roads and trails, unless
23 mandated by an order issued pursuant to 261.50 or a regulation issued pursuant to 261.70.
24 Courts have construed this provision as not requiring authorization for special uses that occur
25 on National Forest System roads and trails and have invalidated orders issued pursuant to
26 section 261.50 that required a permit for special uses occurring on Forest System roads. The
27 Forest Service found that the various court rulings created a gap in regulatory coverage in
28

the special uses program. The new rule requires those who wish to conduct special uses, including outfitting and guiding on National Forest Service roads and trails, to submit a proposal to an authorized officer and obtain a special use authorization.

The Plaintiffs claim that the rule implemented by the Forest Service is so unlike the usual examples of routine administration that no honest , rational, unbiased decision-maker could have determined that the categorical exclusion of section 31.1b, subpart (2) was applicable to it. The Plaintiffs argue that the rule constitutes a major, substantive change in policy that will necessarily have far-reaching economic, environmental and social ramifications. However, the Plaintiffs cite no legal basis or facts in the administrative record to support their argument.

As previously indicated, the Court reviews an agency decision not to prepare an EIS under an arbitrary and capricious standard. Inland Empire Public Lands Council v. Schultz, 992 F.2d 977, 981 (9th Cir. 1991). This standard also applies to an agency's determination that a particular action falls within one of its categorical exclusions. Bicycle Trails Council of Marin v. Babbitt, 82 F.3d 1445, 1456 (9th Cir. 1996). The specific categorical exclusion used by the Forest Service for the regulation is "rules, regulations, or policies to establish Service-wide administrative procedures, program processes, or instructions." See FSH 1909.15, section 31.2. The promulgation of the rule at issue falls within this categorical exclusion as a "rule, regulation or policy" by establishing a requirement for permits for all special uses conducted on National Forest System roads and trials; and "establishing Service-wide administrative procedures" by enumerating which activities require permits and under what circumstances. Here, the rule merely requires those who wish to conduct a special use on National Forest System roads and trails to submit a proposal to an authorized officer to obtain a special use authorization. The rule does no more. As the Defendants correctly note, the rule does not have "an immediate on-the-ground effect." The rule does not issue permits nor does it allocate any resources. As stated, the rule provides that commercial outfitters and guides,  among others, need a special use permit to operate on National Forest System lands.

It is clear to the Court that the Forest Service did not violate NEPA in deciding that preparation of an environmental assessment or an EIS was not necessary prior to the promulgation of the rule at issue.  "An agency satisfies NEPA if it applies its categorical exclusions and determines that neither an environmental assessment or an EIS is required, so long as the application of the exclusions to the facts of the particular action is not arbitrary or capricious."  Bicycle Trails Council, 82 F.3d at 1456 fn 5.  It appears that the Plaintiffs may have confused what is required under NEPA to issue the regulation with what may be required under NEPA to actually issue site-specific special use authorizations.  As explained in the July 13, 2004 publication of the finalized rule, although issuing new site-specific special use authorizations may affect the environment, the clarifying regulation does not actually determine whether any particular use of the National Forest System lands, road, or trails will be permitted.  When applications are made for site specific special use authorizations, those decisions may trigger the need for documentation of environmental analysis on a case-by-case basis.  As written, the rule has no immediate impact on the environment; therefore, the NEPA provisions requiring an environmental assessment or an EIS are not yet triggered.  See, e.g., Southwest Center for Biological Diversity, 100 F.3d at 1449.

Furthermore, under the Forest Service's special use regulations at 36 C.F.R. § 251.45(e)(6) and (g)(1) and (2), environmental analysis in not required until a proposal for a special use authorization has met two levels of screening.  If the proposal fails to pass both levels, NEPA requirements are not triggered.  The regulations clearly state that the applications for special use authorizations will be evaluated pursuant to NEPA, if necessary, before issuance of the permit.  However, the Forest Service was not required to conduct further screening under NEPA for promulgation.

**B.     Extraordinary Circumstances**

The Plaintiffs also argue that extraordinary circumstances existed in the rule-making phase that precluded the Forest Service from relying on a categorical exclusion.  However,

the Plaintiffs seem to misinterpret FSH 1909.5, section 30.3, subpart 2, when making this argument. The regulation outlines the resource conditions that should be considered in determining whether extraordinary circumstances related to the proposed action warrant further analysis and documentation in an environmental assessment or EIS. Those resource conditions are as follows:

> a. Federally listed threatened or endangered species or designated critical habitat, species proposed for Federal listing or proposed critical habitat, or Forest Service sensitive species. b. Flood plains, wetlands, or municipal watersheds. c. Congressionally designated areas, such as wilderness, wilderness study areas, or national recreation areas. d. Inventoried roadless areas. e. Research natural areas. f. American Indian and Alaskan Native religious or cultural sites. g. Archaeological sites, or historic properties.

However, the provision also expressly states that "[t]he mere presence of one or more of these resource conditions does not preclude use of a categorical exclusion. It is the degree of the potential effect of a proposed action on these resource conditions that determines whether extraordinary circumstances exist." Id. Furthermore, the Plaintiffs merely states that examples of (a), (b), (c), (e) and (g) are present in the Sedona Ranger District, but the Plaintiffs fail to make any specific allegations as to what those extraordinary circumstances might be or how the presence of those circumstances precluded the use of a categorical exclusion.

In this case, the Forest Service concluded that the rule would have no effect on the listed resource conditions, and the Court has no reason to find such a decision to be in error. The final rule advises that the issuance of a special use permit under the regulation "may trigger the need for documentation of [environmental assessment] on a case-by-case under NEPA" indicating that the agency clearly knew and understood its present and future obligations under NEPA.

**C.    Count Six**

Although the Plaintiffs also move for summary judgment on Count Six of their First Amended Complaint, this claim is not ripe for review. The Court's Order dated October 24, 2005 specifically states that Count 6 of the Plaintiff's First Amended Complaint is stayed pending further outcome of the administrative appellate process. As such, the Court need not address the arguments raised by the Plaintiffs at this time.

### III.   CONCLUSION

Based on the foregoing analysis, the Court concludes that the Forest Service's decision to apply a categorical exclusion to the promulgated rule was neither arbitrary nor capricious. The record in this case clearly shows that the agency could have reasonably have found the facts as it did; therefore, the Court must affirm.

IT IS ORDERED that the Plaintiffs' Motion for Partial Summary Judgment (Doc. 58) is DENIED regarding Count One of the Plaintiffs' First Amended Complaint.

IT IS FURTHER ORDERED that both the Federal Defendants' Cross-Motion for Partial Summary Judgment (Doc. 65), and Intervenor Pink Jeep's Cross-Motion for Partial Summary Judgment (Doc. 60) are GRANTED regarding Count One of the Plaintiffs' First Amended Complaint.

DATED this 30th day of September, 2006.

Paul G. Rosenblatt
United States District Judge